FILED
2026 Sep-21 PM 02:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

**DANIEL WESTBURG,**
Plaintiff,

**v.**

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration,**
Defendant.

**Case No. 5:25-cv-720-CLM**

# MEMORANDUM OPINION

Daniel Westburg seeks disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Westburg's application for benefits in an opinion written by an Administrative Law Judge ("ALJ").

Westburg argues that the ALJ erred because substantial evidence does not support the ALJ's evaluation of Westburg's subjective pain testimony and finding that Westburg has the residual functional capacity to perform a full range of work at all exertional levels with some non-exertional limitations. As explained below, the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits.

## I. STATEMENT OF THE CASE

### A. Westburg's disability, as told to the ALJ

Westburg was 47 at the time of the ALJ's hearing decision. (R. 38, 251). Westburg has a high school education and past relevant work as a van driver, hand sprayer, and lawn service worker. (R. 37, 275, 285).

According to Westburg, he cannot work because he suffers from bipolar disorder. (R. 274). At the ALJ hearing, Westburg testified that it is hard for him to get going in the mornings, that he suffers from anxiety, and that he often worries about things he cannot control. (R. 58). Though Westburg says that his new medication helps, he also asserts that his mood could change at any time, he struggles with deviations from his routine, and he doesn't easily let things roll off his back. (*Id.*). Westburg states that he is basically a recluse and doesn't talk to anyone other than his son. (*Id.*). For example, Westburg doesn't talk to his other family anymore, and Westburg avoids crowds by shopping early in the morning. (R. 60). Westburg also says that he struggled communicating with co-workers and customers and that talking to others causes him a lot of stress. (*Id.*).

Westburg goes for walks a couple of times a week but doesn't have any hobbies. (R. 63). Though Westburg used to love to play golf, he's lost all interest in playing. (*Id.*). Most days, Westburg gets out of bed around 10:00 or 11:00 AM, takes his medication, and then spends a lot of time on a big chair with an ottoman. (R. 65). And there's many days that Westburg has no motivation to do anything. (*Id.*). Westburg also says that he sometimes struggles with focusing or concentrating on what he's watching on television because he might start worrying or obsessing over something, such as whether he has a certain illness. (R. 65–66).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied.<br>If no, proceed to Step 2. |

| | | |
|---|---|---|
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied.<br>If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted.<br>If no, proceed to Step 4. |
| | **Determine Residual Functional Capacity** | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied.<br>If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied.<br>If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Westburg's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Westburg applied for DIB, a period of disability, and SSI in December 2022. After receiving an initial denial in April 2023, Westburg requested an ALJ hearing, which was held in April 2024. The ALJ ultimately issued an opinion denying Westburg's claims in May 2024 (R. 28–39).

At Step 1, the ALJ determined that Westburg was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined Westburg suffered from the following severe impairments: bipolar disorder and generalized anxiety disorder.

At Step 3, the ALJ found that none of Westburg's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Westburg's residual functional capacity.

The ALJ determined that Westburg had the residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional limitations:

- Westburg can understand, remember, and carry out simple tasks.
- Westburg can maintain concentration, persistence, and pace for such tasks in 2-hour intervals with customary breaks spread throughout the day.
- Westburg cannot interact with the general public.
- Westburg can interact occasionally with coworkers and supervisors.
- Westburg can adapt to occasional changes in the workplace.

At Step 4, the ALJ found that Westburg could not perform his past relevant work.

At Step 5, the ALJ found that Westburg could perform jobs, such as produce packer, hand packager, and conveyor feeder-off bearer, that exist in significant numbers in the national economy and thus Westburg was not disabled under the Social Security Act.

Westburg requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

Westburg argues that substantial evidence does not support the ALJ's evaluation of Westburg's subjective pain testimony and finding that Westburg has the mental capacity to perform work on a sustained basis. An ALJ must apply the "two-step" pain standard to subjective testimony regarding pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If he does, the claimant

must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

At the ALJ hearing, Westburg testified that he worries a lot about things he cannot control, cannot handle deviations from his routine, and is basically a recluse. (R. 58). Westburg also explained that he doesn't talk to anyone other than his son and goes shopping early in the morning to avoid crowds. (R. 58–60). The ALJ found that Westburg's medically determinable impairments could reasonably be expected to cause these alleged symptoms but that Westburg's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record evidence. (R. 34).

The ALJ thoroughly explained the rationale for her credibility determination. First, the ALJ determined that while the record reflected that Westburg was diligent in seeking treatment to help alleviate his mental impairments, it does not reflect that Westburg's counseling and treatment have failed to allow Westburg to perform many functions of daily living. (*Id.*). For example, the ALJ noted that Westburg shares custody of his teenage son, has no trouble handling his own personal care, and reported going to the gym a few times a week. (*Id.*). And Westburg's mental status exams documented good or normal attention and concentration, said that Westburg was cooperative, and didn't suggest any violence or anger issues. (*Id.*). Thus, the ALJ determined that neither the objective medical records nor Westburg's description of his daily activities supported Westburg's allegation that he could not perform all work activity, and the ALJ was unpersuaded that Westburg's mental health symptomatology was debilitating or unmanageable. (*Id.*).

The ALJ also found that nothing in the record other than Westburg's own report suggested that Westburg has significant difficulty in maintaining appropriate social interaction with others. (*Id.*). But the ALJ acknowledged that Westburg may be irritated by constant or frequent contact with the public, coworkers, or supervisors, so the ALJ found that Westburg should be limited to having no contact with the general public and only occasional contact with coworkers and supervisors. (R. 35).

As explained below, Westburg's objective medical records, treatment history, and self-reported daily activities, provided substantial evidence to support the ALJ's credibility determination.

1. *Objective medical evidence*: As the ALJ noted, in October 2023, Westburg reported to Wellstone Behavioral Health that he has been depressed and anxious since childhood. (R. 581–82). The next month, Westburg's treating source at Wellstone found that Westburg had a depressed/anxious mood, inappropriate affect, constricted range, and paranoia. (R. 591). But it was also noted that Westburg was neatly groomed, cooperative, had appropriate behavior, was oriented, alert, and coherent, expressed linear, logical, and goal directed thoughts, and had no harmful ideations or hallucinations. (R. 590–91). Plus, Westburg had intact associations, fair judgment and insight, and good attention/concentration. (R. 591–92). Other treatment notes from Wellstone say that Westburg "has been feeling ok," feels his mood is 'not great,' and took his son to Disney. (R. 618). Westburg also denied any adverse effects from taking Wellbutrin, Lamictal, Seroquel, or Klonopin. (R. 618–19). Westburg was then described as neatly groomed, cooperative, appropriately behaved, oriented, alert, coherent, having no delusions, having intact associations, having fair judgment and insight, and having good attention/concentration. (R. 620–22). Though Westburg was also again described as having a depressed mood, inappropriate affect, and constricted range. (R. 622).

In December 2022, Westburg reported to Dr. Daniel Laeupple that he lost his job and wasn't doing well. (R. 558). Westburg was also described as having a restricted mood and constricted affect. (R. 559). But Westburg was oriented, maintained good eye contact, had normal speech, was cooperative, had a grossly intact memory, had above average intellectual functioning, had normal thought content, and had clear thought process. (*Id.*). In 2023, Dr. Laeupple reported that Westburg had an indifferent mood and constricted affect. (R. 568). But Dr. Laeupple again found that Westburg had normal speech, cooperative behavior, grossly intact memory, normal thought content, clear thought process, and normal attention span. (*Id.*).

A reasonable person could review these medical records and agree with the ALJ that Westburg's mental impairments weren't as severe as he alleged at the ALJ hearing. A reasonable person could also agree that Westburg can work as long as he receives the non-exertional limitations that the ALJ gave him. And though Westburg argues otherwise, the ALJ didn't "cherry pick," which medical records she considered. As explained above, the ALJ considered Westburg's mental status exam findings that showed that he had a depressed mood, fair insight and judgment, inappropriate affect, and constricted range. But Westburg's mental status exams also included normal findings that persuaded the ALJ that Westburg's impairments weren't as severe as he alleged. The ALJ also recognized that Westburg "received medication management for his mental health symptoms during the period in question," (R. 33), so the record refutes Westburg's assertion that the ALJ ignored the fact that he was treated for his mental health impairments with multiple medications, including Seroquel, Lamictal, Wellbutrin, and Klonopin. Finally, the ALJ explained why she found unpersuasive Dr. Laeupple's assertions that Westburg should receive disability and could not maintain gainful employment. As the ALJ noted, these opinions did not assess Westburg's functional limitations and are on issues reserved for the Commissioner. (R. 36). Thus, Dr. Laeupple's statements were "inherently neither valuable nor persuasive." *See* 20 C.F.R. § 404.1520b(c)(3)(i).

In sum, the ALJ cited to evidence both favorable and unfavorable to Westburg. Plus, an ALJ does not need to cite to every piece of evidence so long as this court can tell that he considered the claimant's "medical condition as a whole." *Mitchell*, 771 F.3d at 782. The court is satisfied that the ALJ considered Westburg's mental health impairments as a whole and that substantial evidence supports the ALJ's findings related to the objective medical evidence.

2. *Daily Activities*: Westburg also says that the ALJ erred in discrediting his testimony based on his daily activities. A claimant's admission that he participates in daily activities for short durations does not disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but it is appropriate for an ALJ to consider daily activities relevant to a claimant's subjective pain allegations, *see* 20 C.F.R. § 404.1529(c)(3)(i).

According to Westburg, the ALJ's description of his daily activities improperly omitted the limitations that Westburg placed on these activities. For example, while Westburg can prepare his own meals, he points out that the food he prepares is oatmeal, beans, and other simple items. (R. 332). Westburg also notes that he reported to Wellstone that he goes to the gym to get out of the house and stated that if he didn't go to the gym, he might think more about suicide. (R. 601). Finally, Westburg acknowledges that his son lives with him and that he went with his son on a trip to Disney World. But Westburg points out that he reported (1) his son was 17 and could care for himself, and (2) he was scared of going to Disney, not happy about going, and just tried to enjoy the trip for his son. (R. 331, 583, 607, 610).

Westburg engaged in the activities that the ALJ identified in her decision, so the ALJ didn't misstate the facts. And though Westburg qualified his level of activity, it was still appropriate for the ALJ to consider Westburg's daily activities when assessing his subjective testimony. *See* 20 C.F.R. § 404.1529(c)(3)(i).

Nor did the ALJ err by finding Westburg not disabled even though he reported avoiding other people and not talking to anyone other than his son. The ALJ recognized that Westburg had difficulty interacting with others, so she found that he cannot interact with the general public and can only occasionally interact with coworkers and supervisors. But the ALJ reasonably found that Westburg didn't need any further limitations because he was able to clearly communicate with his treatment providers, was consistently noted as cooperative during mental health exams, and testified that his medication helps his symptoms. (R. 34–35).

In short, the ALJ appropriately considered Westburg's daily activities as one of several factors to consider when weighing Westburg's credibility and assessing his residual functional capacity. Thus, the court sees no error in how the ALJ assessed Westburg's daily activities.

—

This court may reverse the ALJ's credibility determinations only if the ALJ "was clearly wrong to discredit" the claimant's subjective pain testimony. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). And the court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Applying this standard, the ALJ did not reversibly err in making his credibility determination or finding that Westburg can perform a full range of work with several non-exertional limitations.

## IV. CONCLUSION

For these reasons, the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on September 21, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE